*385 OPINION OF THE COURT
Ferris D. Lebous, J.
The defendant State of New York moves for summary judgment on the ground this claim fails to state a cause of action by failing to comply with the statutory pleading requirements relative to unjust conviction claims. (Court of Claims Act § 8-b; CPLR 3212.) Claimant opposes the motion.
Background
1. Arrest
On October 11, 1995, claimant was arrested and charged with third degree criminal sale of a controlled substance. (Penal Law § 220.39 [1].) The circumstances leading up to said arrest and charge were described by the Court of Appeals as follows:
“[Claimant] approached two off-duty police officers and inquired whether they were interested in purchasing an unspecified type and quantity of drugs. One of the officers asked if [claimant] had any ‘dime bags’; [claimant] responded that he only had ‘twenties.’ Ultimately, [claimant] got into the officers’ vehicle and led them to the driveway of a building. [Claimant] told the officers to give him some money, and he would go into the building and get the drugs. The officer who had offered to purchase the drugs was unwilling to go along with this arrangement. The money belonged to the officer and he was admittedly afraid that [claimant] would simply abscond with it.
“Because of the officer’s unwillingness to either part with the money or accompany [claimant] into the building, the transaction proceeded no further and without ever having exited the vehicle, [claimant] was placed under arrest for offering to sell drugs. [Claimant] did not possess any money or drugs at the time of his arrest and there was no evidence that he had previously sold drugs to the officers or anyone else. Although [claimant] did later give an oral statement indicating he intended to sell cocaine to the officers, he made no reference to a source of drugs or prior drug sales at the building in question.” (People v Mike, 92 NY2d 996, 998 [1998].)
2. Criminal Trial
Claimant waived his right to grand jury immunity and testified before the grand jury, the minutes of which are attached to *386 the State’s papers. (State’s exhibit 10.) Claimant elected not to testify at the suppression hearing. Claimant also waived his right to a jury trial. Claimant did not testify at trial. The only witnesses who testified at trial were the two off-duty police officers. On June 6, 1996, claimant was convicted after a bench trial on the charge of third degree criminal sale of a controlled substance in violation of Penal Law § 220.39 (1), a class B felony. Thereafter, on July 29, 1996, claimant was sentenced to an indeterminate term of incarceration of 3 to 9 years. Claimant was incarcerated on August 29, 1996, but filed an appeal of said conviction.
3. Appellate Division
On January 8, 1998, the Appellate Division, Third Department, found the evidence insufficient to support the criminal sale charge and reduced claimant’s conviction to attempting to sell a controlled substance in the third degree. (People v Mike, 246 AD2d 682 [1998], revd 92 NY2d 996 [1998]; Penal Law §§ 110.00, 110.10.) More specifically, the Appellate Division stated as follows:
“[T]he proof is insufficient to establish, beyond a reasonable doubt, that [claimant] made a ‘bona fide’ offer to sell narcotics under circumstances evincing an intent and ability to follow through with that offer. While his postarrest oral and written statements arguably demonstrate that he intended to try to make good on his offer, rather than merely make off with the officers’ money, and that he believed that he could procure the cocaine they had requested, there is no proof that he actually had that ability.” (Mike, 246 AD2d at 683 [citation omitted].)
On April 9, 1998, claimant was resentenced to 3 to 6 years on the reduced charge pursuant to the terms of the Appellate Division’s decision. Claimant filed an appeal to the Court of Appeals.
4. Court of Appeals
On December 3, 1998, the Court of Appeals determined that the decision of the Appellate Division should be reversed and the indictment dismissed. The Court of Appeals agreed that the evidence was insufficient to support the original criminal sale charge, but also determined, contrary to the Appellate Division, that the evidence was insufficient to support the reduced attempted sale charge. With respect to the original criminal sale charge, the Court of Appeals agreed that there must be evi *387 dence of a bona fide offer to sell (e.g., both the intent and the ability to proceed with the sale) and that the evidence here was insufficient to establish that claimant had the ability to carry out the sale. (Mike, 92 NY2d at 998-999.) With respect to the attempted sale conviction, the Court of Appeals found the evidence insufficient to show that claimant “came dangerously close to actually completing the sale.” (Id. at 999.) In sum, the Court of Appeals determined that “the evidence was insufficient to support either offense.” (Id.) Claimant was released from custody on December 9, 1998.
5. Court of Claims
This claim was filed with the clerk of the court on November 29, 2000 and personally served upon the Office of the Attorney General on November 30, 2000. The State filed a verified answer on January 8, 2001 containing various affirmative defenses including that the claim failed to comply with Court of Claims Act § 8-b (4). (State’s verified answer 1Í 9.) Claimant was deposed as part of discovery, the transcript of which is attached to the State’s papers. (State’s exhibit 5.) Now, by way of this motion, the State moves for summary judgment dismissing the claim based on claimant’s failure to comply with Court of Claims Act § 8-b (4).
Law
Court of Claims Act § 8-b was enacted to provide damages to individuals against the State if they are wrongly convicted of a crime and can demonstrate their innocence. The legislative history makes clear that the policy underlying this statute adheres to the principle that:
“[T]he mere statement that one’s conviction has been reversed or vacated will not establish a prima facie case. In addition to the fact of reversal or vacating, it will still be necessary to state facts which will establish innocence-, failure to do so will result in dismissal of the claim.” (Report of Law Rev Commn to Governor on Redress for Innocent Persons Unjustly Convicted and Subsequently Imprisoned, 1984 McKinney’s Session Laws of NY, at 2929 [emphasis added].)
Stated another way, “the ‘linchpin’ of the statute is innocence.” (Ivey v State of New York, 80 NY2d 474, 479 [1992].)
Court of Claims Act § 8-b (4) states, in pertinent part, as follows:
*388 “The claim shall state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial in proving that (a) he did not commit any of the acts charged in the accusatory instrument . . . and (b) he did not by his own conduct cause or bring about his conviction ... If the court finds after reading the claim that claimant is not likely to succeed at trial, it shall dismiss the claim, either on its own motion or on the motion of the state.”
The parties agree that the questions presented to the court on this motion are whether the State has established as a matter of law that claimant is not likely to succeed at trial in proving by clear and convincing evidence that: (1) he did not commit any of the acts charged in the accusatory instrument, and (2) he did not by his own conduct cause or bring about his conviction. The court must dismiss the claim if it finds that claimant is not likely to succeed at trial. (Court of Claims Act § 8-b [4].)
1. Whether Claimant Did Not Commit Any of the Acts Charged in the Accusatory Instrument
The State’s first argument for dismissal is that this claim does not state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial in proving by clear and convincing evidence that he did not commit any of the acts charged in the accusatory instrument. More specifically, the State argues that claimant readily admitted in his written statements,[1] deposition testimony, and grand jury testimony to committing the following acts: flagging down an unmarked police vehicle; engaging in discussions regarding the purchase of “dime” and “twenty” bags; offering to make change for a hundred dollar bill; directing the officers to a location to make change; and offering his wallet as collateral.
Claimant has not submitted an affidavit in opposition to this motion, but rather relies on his counsel’s affirmation and memorandum of law to assert that the Court of Appeals decision establishes that there was no offer or agreement to sell drugs.
It is well settled that:
“The People’s inability to satisfy their burden of proof at the criminal trial is simply not equivalent *389 to the requirement of Court of Claims Act § 8-b (4) that claimant state facts sufficient to support a finding that [he] is likely to succeed in proving that [he] did not commit the acts with which [he] was charged (Piccarreto v State of New York, 144 AD2d 920).” (Reed v State of New York, 78 NY2d 1, 9 [1991]; Martinez v State of New York, Ct Cl, Mar. 22, 2005, Scuccimarra, J., Claim No. 109422, Motion Nos. M-69024, CM-69353 [UID No. 2005-030-911].)[2]
Here, the Court of Appeals reversed claimant’s conviction after it determined that the evidence submitted by the prosecution to support its case was legally insufficient to prove the claimant’s guilt beyond a reasonable doubt with respect to either the criminal sale or the attempted sale convictions. More specifically, the Court of Appeals determined that even though claimant demonstrated the intent to sell drugs, there was no evidence to establish his ability to do so. (Mike, 92 NY2d at 998-999.) Stated another way, the Court of Appeals did not determine that claimant was innocent of the charges, but rather that the prosecution failed to prove the key elements of the charges.
Turning to the State’s arguments, the court will highlight those portions of claimant’s deposition testimony and written statement in which he admits to engaging in the following conduct:[3]
(1) Flagged Down an Unmarked Police Vehicle
“A. [I] seen a Bronco, a car coming towards me. It was going at a slow rate of speed so I was looking at it, and I thought they were looking at me, so I believe to my understanding, I waved to him as saying hi. And he kept going. I continued to walk and they continued to drive at a slow rate of speed. So when I was crossing the street, I noticed the car had stopped and had its reverse lights on and I threw my hands up in the air saying, what do you guys want? When I walked up to the car, I noticed it was two people in there, and I said, what’s up dudes? And they said, what’s up? And after that, I said, what do you guys want” (State’s exhibit 5 *390 [claimant’s examination before trial (EBT) at 21]). “[T]onight I was on Fayette st. [sic] in Binghamton when I saw this car coming down the street. It was going pretty slow, so I waved to it. I looked back and the car stopped. I walked up to the car. I asked the driver what was going on Dude.” (State’s exhibit 10 [claimant’s statement sworn to Oct. 11, 1995].)
(2) Discussions Regarding the Purchase of “Dime” and “Twenty” Bags
“A. [A]nd at that point they asked me, can I get them a dime or do I have a dime? I says [sic], no, a 20, because I was still unsure and I said 20. And they says [sic], we only have $15 on us and I reached for it.
“Q. Fifteen, they said?
“A. They only had 15 on them. I said 20, and I reached for it, but he wouldn’t give it to me. He says we have $100 bill.” (State’s exhibit 5 [claimant’s EBT at 21-22].)
“A. [T]hen he asked, could I get two twenties, and I says [sic] yes.” (State’s exhibit 5 [claimant’s EBT at 23].)
“[H]e asked me if I had a ten bag on me. I told him ‘NO’. I told him ‘Twenty bags only’.
“The passenger then asked me if he could get two twenty dollar bags. I told him yes, but I have to go get it.” (State’s exhibit 10 [claimant’s statement sworn to Oct. 11, 1995].)
(3) Discussed Making Change for a Hundred Dollar Bill
“A. They says [sic], no, they says [sic], we only have a $100 bill, so my understanding, if I can go back, and I reached for the 100, and he says — and he pulled it back. You’re not going to take my $100 bill, and I asked if they was [sic] cops or something, they says [sic], no. And then I got into the vehicle because I knew where I could get change for the $100 bill.” (State’s exhibit 5 [claimant’s EBT at 22].)
“[T]he guy only had a hundred dollar bill, so I asked him to let me into the car. I told them I could get change.” (State’s exhibit 10 [claimant’s statement sworn to Oct. 11, 1995].)
*391 (4) Directed the Officers to a Location to Make Change
“A. And then I got into the vehicle because I knew where I could get change for the $100 bill. After I got in the car and we started driving down the street, we went to an apartment building.” (State’s exhibit 5 [claimant’s EBT at 22].)
“I told them I was going to get them change I told them to drive [szc] me down the street. I had them pull into the driveway of a house down the street.” (State’s exhibit 10 [claimant’s statement sworn to Oct. 11, 1995].)
(5) Offered His Wallet as Collateral
“A. I offered to give those guys my wallet as collateral, but they says [szc], no, we’re not going to give you the $100 bill.” (State’s exhibit 5 [claimant’s EBT at 23].)
“He didn’t want me to leave with his money. I handed the passenger my wallet and told him that I wasn’t going to rip him off. I told him he could hold my wallet for collateral.” (State’s exhibit 10 [claimant’s statement sworn to Oct. 11, 1995].)
The court finds that while claimant’s own testimony and statement admitting to the various acts noted above may not have sufficed for a finding of guilt beyond a reasonable doubt on either the sale or attempted sale charge, they are convincing evidence to this court that claimant committed the acts charged in his accusatory instrument within the meaning of Court of Claims Act § 8-b (4). (Moore v State of New York, Ct Cl, Mar. 9, 2004, Sise, P.J., Claim No. 106228, Motion No. M-67470 [UID No. 2004-028-511].) Moreover, claimant failed to submit an affidavit in opposition affirmatively reciting the facts that he intends to establish at trial to establish his innocence. (Duval v State of New York, Ct Cl, Oct. 4, 2002, Patti, J., Claim No. 105548, Motion Nos. M-64867, M-65282, CM-65283 [UID No. 2002-013-034].) Without such an affidavit, the court is unable to conclude that claimant “[w]ould clearly and convincingly establish the elements of the claim.” (Moses v State of New York, 137 Misc 2d 1081, 1084 [1987].) Consequently, the court finds that claimant is not likely to succeed at trial in establishing that he did not commit any of the acts charged in the accusatory instrument and, as such, finds that the State is entitled to summary judgment as a matter of law dismissing this claim.
*392 2. Whether Claimant Did Not by His Own Conduct Cause or Bring About His Conviction
As a separate and distinct basis for dismissal, the court notes that even if claimant had been successful in establishing that he did not commit any of the acts charged in the accusatory instrument, the court finds that claimant is not likely to succeed at trial in establishing by clear and convincing proof that he did not by his own conduct cause or bring about his conviction.
Court of Claims Act § 8-b (4) requires that the claim shall state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial in proving that he did not by his own conduct cause or bring about his conviction. More specifically, this element has been described as requiring a claimant
“[t]o establish that he did not cause or bring about his prosecution by reason of his own misconduct. Examples of such misconduct would include falsely giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony or concealing the guilt of another.” (Report of Law Rev Commn, 1984 McKinney’s Session Laws of NY, at 2932.)
These five examples of misconduct that bar relief under this statute are illustrative and not exhaustive since other misconduct has also been deemed to prohibit recovery under this statute. (Coakley v State of New York, 150 Misc 2d 903, 910-911 [1991], affd 225 AD2d 477 [1996]; Moses, 137 Misc 2d at 1085-1086.)
Here, again, the State points to claimant’s conduct itemized hereinabove, namely, his affirmative acts of flagging down the police vehicle, engaging in discussions regarding “dime” and “twenty” bags, offering to make change for a hundred dollar bill, directing the officers to another location in order to make change, and offering his wallet as collateral while he did so.
The court finds that throughout claimant’s deposition testimony, written statement, and grand jury testimony is claimant’s attempt to explain that he was either just “playing along” with these officers to see what they wanted or to see if he could get them what they wanted or to run away with their money. In any event, in this court’s view, claimant’s actions of engaging in discussions regarding dime and twenty bags, even if he was just playing along, equates to the type of misconduct *393 envisioned by the Law Revision Commission to prohibit recovery under this statute. In sum, the court finds that claimant is not likely to succeed at trial in establishing by clear and convincing evidence that he did not by his own conduct cause or bring about his conviction and, as such, finds that the State is entitled to summary judgment as a matter of law on this basis as well.
Accordingly, in view of the foregoing, it is ordered that the State’s motion for summary judgment, Motion No. M-70629, is granted and Claim No. 103441 is dismissed.

. Claimant prepared three written statements only one of which was formally signed and witnessed which is the statement the court quotes herein. The other two statements were never signed by claimant but apparently typed by him while awaiting processing. (State’s exhibit 10.)

. Selected unreported decisions from the Court of Claims are available via the Internet at <http://www.nyscourtofclaims.state.ny.us/decision.htm>.

. Claimant’s testimony in the grand jury minutes is similar in most respects to his deposition testimony and for sake of brevity will not be repeated here. (State’s exhibit 10 [claimant’s testimony before grand jury, Oct. 10, 1995].)